# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

PAW H.,[1]

                                        Plaintiff,

         v.                                            6:23-CV-318
                                                       (MJK)

MARTIN J. O'MALLEY,

                                        Defendant.

---

ELIZABETH V. LOMBARDI, ESQ., for Plaintiff
JASON P. PECK, Special Asst. U.S. Attorney, for Defendant

MITCHELL J. KATZ, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

Plaintiff commenced this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security, denying her application for benefits.  This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties.  (Dkt. No. 4).  Both parties filed briefs, which the court treats as motions under Federal Rule of Civil Procedure Rule 12(c), in accordance with General Order 18.

---

[1] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

## I.   <u>PROCEDURAL HISTORY</u>

On May 10, 2018, plaintiff filed an application for Supplemental Security Income ("SSI"), alleging disability beginning January 1, 2010.  (Administrative Transcript[2] ("T") 84, 308-17).  Plaintiff's application was denied on July 11, 2018. (T. 84, 85-90).  On August 26, 2021,[3] Administrative Law Judge ("ALJ") John P. Ramos conducted a telephone hearing during which plaintiff and vocational expert ("VE") Mary Vasishth testified.  (T. 43-70).  On September 27, 2021, the ALJ issued a decision denying plaintiff's claim.  (T. 21-31).  This decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on February 2, 2023.  (T. 1-3).

## II.   <u>GENERALLY APPLICABLE LAW</u>

### A.   **Disability Standards**

To be considered disabled, a plaintiff seeking DIB or Supplemental Security Income benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

---

[2] The Commissioner initially filed the administrative transcript in this case on June 13, 2023.  (Dkt. No. 8).  At the court's request, the Commissioner filed an Amended Administrative Transcript on January 23, 2024, to remedy various bookmarking and indexing deficiencies contained therein. (Dkt. Nos. 14, 15).  No substantive changes were made in the course of refiling the administrative transcript, and the amended transcript should otherwise be an exact replica of the transcript as it was previously filed. (*Compare* Dkt. No. 8 *with* Dkt. No. 15).

[3] Plaintiff initially appeared for an administrative hearing in-person on January 28, 2020, however ALJ Ramos adjourned the proceeding to provide plaintiff an opportunity to obtain counsel.  (T. 39-41).

physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

B.    **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence

3

supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review "– even more so than the 'clearly erroneous standard.'"  *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Id.  See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]").  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

Plaintiff does not speak English, and testified that she cannot read, write, tell time or count.  (T. 53-54).  Despite the assistance of a translator at the administrative hearing, plaintiff was unable to provide basic information to the ALJ such as her address, date of birth, age,[4] or the country in which she was born.  (T. 48-49).  According to plaintiff's medical records, she was a widow.  (T. 433, 529).  She lived with her five children, whose ages she did not know, who were "all in school."  (T. 49-50).  However, she also testified that her children "do work" and that she just "live[d] with them so [she didn't] have expense[s]."  (T. 49).

Plaintiff testified that she has never worked.  (T. 49).  She was actively treating for a seizure condition.  (T. 50).  The medicine was "not helping [her seizures] that much."  (*Id.*).  She could not estimate how often she experienced seizures or remember the last time she had an episode. (T. 50).  During a seizure, she was "out of it," and her head felt "different."  (T. 50-51).  In addition, plaintiff experienced headaches "sometimes."  (T. 51).  She was unsure if she was taking medication for her headaches. (*Id.*).  She relied on her children to assist with keeping track of her medication. (*Id.*).

Plaintiff did not have a driver's license and relied on her sister for transportation. (T. 51, 53).  Her children cooked and cleaned the house without plaintiff's assistance. (T. 52).  They also reminded plaintiff to clean herself and supervised her when she bathed.  (T. 54).  Plaintiff did not know how to operate a bath in terms of turning on the running water and relied on her daughter to do so.  (*Id.*).  When her children were in

---

[4] The ALJ recognized that, according to the records contained in the administrative transcript, plaintiff was forty years old at the time of the hearing.  (T. 58-59).

school, plaintiff went to her sister's house.  (T. 55-56).  She did not watch television or listen to the radio; she testified that she did not do much to pass the time except "sit and be still[.]"  (T. 52, 56).  It was hard for plaintiff to follow directions due to her issues with memory.  (T. 55).

The ALJ's decision provides an additional summary of the medical and other evidence of record.  (T. 27-30).  Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.   THE ALJ'S DECISION

The ALJ first determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since her application date of May 10, 2018.  (T. 23).  Next, the ALJ found that plaintiff's seizure disorder was a severe impairment.  (T. 23-26).  At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  (T. 26).

Next, the ALJ found that plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> she is limited to unskilled work at the SVP 1 or 2 levels.  The [plaintiff] cannot do any work requiring written instructions or record keeping.  She cannot work at unprotected heights or use ladders, ropes or scaffolds.  The [plaintiff] cannot work with dangerous machinery or operate a motor vehicle.

(T. 26).

In making the RFC determination, the ALJ stated that he considered all of plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (T. 26). The ALJ further noted that he fully considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. § 416.920c. (*Id.*). After considering plaintiff's statements regarding her symptoms, along with the other evidence of record, the ALJ concluded that the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (T. 27). The ALJ engaged in further analysis, which the court will discuss below in conjunction with the plaintiff's arguments. (T. 26-30).

The ALJ then found that plaintiff had no past relevant work, and that she was illiterate. (T. 30). However, at step five, using the Medical Vocational Guidelines as a "framework," and the VE's testimony, the ALJ found that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (T. 30-31). Thus, the ALJ found that plaintiff was not disabled. (T. 31).

## V.    ISSUE IN CONTENTION

Plaintiff's arguments contesting the ALJ's decision may be summarized as follows:

1.    The ALJ erred at step two in concluding that plaintiff's intellectual disability and cervical radiculopathy/disc disorder are not medically determinable impairments. (Plaintiff's Brief ("Pl.'s Br.") at 5-9) (Dkt. No. 9).

2.      The ALJ erred at step two in concluding that plaintiff's headaches, depression and anxiety were non-severe impairments.  (Pl.'s Br. at 9-13).

3.      The ALJ's conclusion that plaintiff possessed the mathematical skills to perform even unskilled work was not supported by substantial evidence.  (Pl.'s Br. at 13-15).

4.      The ALJ erred in evaluating the persuasiveness of the medical opinions of record.  (Pl.'s Br. at 15-20).

3.      The ALJ erred in relying on the VE's testimony at step five without resolving conflicts with the Dictionary of Occupational Titles ("DOT").  (Pl.'s Br. at 20-24).

The Commissioner contends that the ALJ sufficiently evaluated the evidence of record, and that her decision was supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 4-14) (Dkt. No. 11).

For the following reasons, this court agrees that the ALJ's implied conclusion that plaintiff could perform the minimum GED mathematical development requirements of unskilled work was not supported by substantial evidence.  Moreover, because the ALJ's hypothetical to the VE failed to incorporate plaintiff's capacity to meet the GED levels, the VE's equivocal response to that hypothetical did not meet the Commissioner's step-five burden of demonstrating that plaintiff could perform jobs which exist in significant numbers in the national economy.  Thus, remand is warranted for further proceedings as detailed below.

8

**DISCUSSION**

**VI.** **RFC/STEP FIVE ANALYSIS**

    **A.** **Legal Standards**

        **1.** **RFC**

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill*, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

    In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff can perform and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010);

*Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.    Step Five Analysis

The burden shifts to the Commissioner at step five "to show there is other work that [the claimant] can perform." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and] . . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved." *Id.* at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983)). "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 211 (N.D.N.Y. 2009) (citation omitted).

### B.    Analysis

Plaintiff's most compelling argument is that the ALJ's RFC and hypothetical question to the VE failed to adequately account for plaintiff's evidenced mathematical limitations.  (Pl.'s Br. at 13-15).  At the August 26, 2021 administrative hearing, the ALJ proposed the following hypothetical to the VE, which ultimately tracked the ALJ's RFC determination for unskilled work at all exertional levels:

> We're going to limit the individual to unskilled work, as I said, SVP1 or 2, no work that would require written instructions or written recordkeeping by the individual.  There should be no work at unprotected heights, no use of ladders, ropes or scaffolds, no working with dangerous machinery, and no operating a motor vehicle.

(T. 59).  The ALJ asked the VE if there was full-time work for an individual with such limitations. (*Id.*).  The VE responded:

> Yes, Your Honor.  I have a few.  It's just the GED reasoning math and language development levels, you know, the lowest is grades 1 through 3.  **And you know, the math and language is above what she's able to do.**  So, I can give you occupations that have the lowest, like reasoning math and language levels of 111.  It doesn't take long to learn, as you mentioned, SVP1 or 2, which is within a month.  But by definition, I just wanted you to know that that's what the GED level 1 says, you know, so.

(*Id.*) (emphasis added).  The VE proceeded to provide an "exhaustive listing" of jobs existing in significant numbers that an individual with the hypothetical RFC could perform: housekeeping cleaner, garment folder, and cleaner and polisher.  (T. 60).  The ALJ relied on these occupations to conclude that plaintiff was capable of performing substantial gainful employment. (T. 31).

11

In its descriptions of the qualifications to perform a particular occupation, the Dictionary of Occupational Titles includes a general education development ("GED") level and a specific vocational preparation ("SVP") level.  SVP is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed to average performance in a specific job-worker situation. *See* United States Department of Labor, *Dictionary of Occupational Titles* (4th ed. Rev. 1991) ("DOT") Appendix C, 1991 WL 688702 (Jan. 1, 2016).  The SVP levels are referenced in the social security regulations, and are routinely accounted for during disability proceedings by determining whether a claimant can engage in skilled, semi-skilled, or unskilled work.  20 C.F.R. §§ 404.1568, 416.968; *see also* SSR 00-4p, 2000 WL 1898704 at *3 (Dec. 4, 2000). As relevant here, the regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 CFR §§ 404.1568, 416.968.  "Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."  SSR 00-4p, 2000 WL 1898704 at *3.  The three examples of jobs that the ALJ concluded plaintiff could perform are categorized as SVP level 2 and, thus, involve unskilled work.  *See* DOT No. 323.687-014, 1991 WL 672783 (housekeeping cleaner); No. 369.687-018, 1991 WL 673072 (garment folder); No. 709.687-010, 1991 WL 679134 (cleaner polisher).

Unlike SVP, GED embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. DOT Appendix C,

1991 WL 688702 (Jan. 1, 2016). The GED score is broken into three categories: (1) reasoning development; (2) mathematical development; and (3) language development. Occupations that require a GED level 1 in mathematical development require an individual to possess the following skills: Add and subtract two-digit numbers. Multiply and divide 10's and 100's by 2, 3, 4, 5. Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound. *Id*. Courts have generally attributed a GED level 1 in mathematical development to correspond to no more than a fourth-grade level of mathematical ability. *See Serrano v. Comm'r of Soc. Sec*., No. 22 Civ. 5627, 2023 WL 6049651, at *15 (S.D.N.Y. July 24, 2023), *report and recommendation adopted*, No. 22-CV-5627, 2023 WL 6039337 (S.D.N.Y. Sept. 15, 2023) (citing *Hall v. Astrue*, No. 11 Civ. 22, 2012 WL 3732815, at *8 (E.D.N.C. July 6, 2012) (collecting cases)). Each of the jobs identified by the VE in this case require a GED level 1 in mathematical development. *See* DOT No. 323.687-014, 1991 WL 672783 (housekeeping cleaner); No. 369.687-018, 1991 WL 673072 (garment folder); No. 709.687-010, 1991 WL 679134 (cleaner polisher).

According to the SSA, the ALJ is encouraged to consider GED ratings that appear to conflict with a claimant's RFC:

> We do not rely on these [GED] ratings to conclude whether a claimant can perform a particular occupation when we cite occupations that demonstrate the ability to do other work. However, adjudicators should consider GED ratings that may appear to conflict with the claimant's RFC and the cited occupation(s); for example, an occupation with the GED

> reasoning level of 3 or higher for a claimant who is limited to
> performing simple, routine, or unskilled tasks.

*Diaz v. Colvin*, No. 4:16-CV-00358, 2017 WL 1078229, at \*16 (M.D. Pa. Mar. 22,
2017) (citing Social Security Administration Memorandum No. 09-2139 (Dec. 28,
2009) ("SSM 09-2139")).

Here, although the ALJ's RFC determination specifically limited plaintiff to
work categorized as SVP 1 or 2, the ALJ did not otherwise account for, nor distinguish,
the evidence of record suggesting that plaintiff could not meet even the minimum GED
mathematical development level to perform unskilled work. It is undisputed that
plaintiff was a forty-year-old individual who did not speak English, was illiterate, and
had no formal education or past relevant work experience. (T. 30, 58-59). In her
function report, plaintiff represented that she was not able to pay bills, count change, or
handle a savings account. (T. 350). At the administrative hearing, she could not
calculate the age of her children, her own age, or state how many years she had been
living in the United States. (T. 48-49). Upon his examination of plaintiff, consultative
examiner Dr. Noia observed that plaintiff was "able to do counting," but she "could not
do simple calculations or serial 7s or 3s because of poor arithmetic skills." (T. 490).
He observed that her intellectual functioning was estimated to be in the "deficient
range," and her general fund of information appeared to be limited. (*Id.*). In the
diagnosis portion of his opinion, Dr. Noia suggested to rule out whether plaintiff had a
mild intellectual disability, and stated that plaintiff "may need assistance managing
money due to poor arithmetic skills." (T. 491). As plaintiff points out in her brief, this

14

evidence, at the least, calls into question whether plaintiff could perform even the simple calculations required at GED mathematical development level 1.

The ALJ's failure to to address the effect of plaintiff's undisputed difficulties with math, among other potential intellectual deficiencies, on her ability to engage in substantial gainful activity was error warranting remand.  Although "[i]t is the province of the ALJ to resolve genuine conflicts in the record," *Clemons v. Comm'r of Soc. Sec.*, No. 5:16-CV-658(ATB), 2017 WL 766901, at *4 (N.D.N.Y. Feb. 27, 2017) (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)), "the ALJ must construct an accurate and logical bridge between the information in the record and the conclusion that the claimant is not disabled," *Meyer v. Berryhill*, No. 17-CV-515, 2019 WL 3457219, at *4 (W.D.N.Y. July 31, 2019). Only when the ALJ does so is the court in a position to "to conduct meaningful review" as to whether "the ALJ's analysis and resulting RFC are supported by substantial evidence." *Muldowney v. Comm'r of Soc. Sec.*, No. 5:17-CV-0352(TWD), 2018 WL 2417837, at *8 (N.D.N.Y. May 29, 2018) (citing cases).  In this case, the ALJ failed to create a logical bridge between the significant evidence of record concerning plaintiff's mathematical deficiencies, and the omission of any limitations addressing those deficiencies in the RFC determination.  In limiting plaintiff to work at the SVP 1 or 2 levels, the ALJ did not resolve the separate issue of whether plaintiff met the specific GED requirements of the occupations identified in the step five finding. *See Diaz v. Colvin*, No. 4:16-CV-00358, 2017 WL 1078229, at *16 (M.D. Pa. Mar. 22, 2017) ("[T]he mere fact that an occupation is "unskilled" and therefore within a claimant's SVP does not neutralize or supplant a

15

[GED] level conflict.") (citation omitted).  Moreover, the ALJ's omission of work requiring written instructions or record keeping did not address plaintiff's documented difficulties with math.

Nor is this a case in which the lack of discussion by the ALJ concerning the plaintiff's documented math difficulties is rendered harmless by evidence of record otherwise supporting the plaintiff's ability to meet the GED level 1 requirement.  *See Kelley S. v. Comm'r of Soc. Sec.*, No. 17 Civ. 1234 (ATB), 2019 WL 529909, at *10 (N.D.N.Y. Feb. 11, 2019) (finding that ALJ did not err in failing to specifically mention claimant's documented math difficulties, because claimant with documented fifth-grade mathematical skills could perform jobs with mathematical level of 1); *see also Villalobo v. Saul,* No. 19 Civ. 11560, 2021 WL 830034, at *24 (S.D.N.Y. Feb. 9, 2021) (finding that, although there was conflicting evidence regarding plaintiff's language abilities, there was "enough to support the ALJ's finding that she could perform unskilled work involving minimal communication and literacy skills" required of a GED language level 1); *Malone v. Comm'r of Soc*. Sec., 21-CV-1928, 2022 WL 4134368, at *12 (S.D.N.Y. Aug. 6, 2022) (rejecting request to remand where testing assessed plaintiff's reading grade level, providing substantial evidence in the record to support the ALJ's determination that plaintiff could perform simple work requiring level 1 language skills).  On the contrary, the Commissioner here has not pointed to any substantial evidence supporting the ALJ's implied conclusion that plaintiff could perform work requiring GED level 1 mathematical development skills, in the face of significant evidence suggesting otherwise.

The ALJ's failure to formulate a sufficiently detailed RFC analysis in this matter, coupled with the VE's equivocal testimony, leaves considerable doubt as to whether plaintiff can meet the minimum GED mathematical development requirements[5] of the jobs on which the ALJ's step-five finding relied.  At the administrative hearing, the VE explicitly explained to the ALJ that the GED levels of the only relevant occupations available within the hypothetical exceeded plaintiff's language and mathematical abilities, despite their categorization as unskilled work.  (T. 59).  Notwithstanding the VE's apprehension, the ALJ asked the VE to proceed and "give the examples that [the VE had], and we'll go from there."  (T. 59).  The VE proceeded to do just that, identifying the aforementioned jobs as an exhaustive list.  The ALJ elicited from the VE that these jobs do not involve "handling money or anything like that."  (T. 62).  The VE also testified that the cleaner polisher job "might" require measurement of a liquid cleanser.  (T. 68).  Otherwise, the ALJ failed to elicit any testimony from the VE that reconciled the conflict between the GED requirements contained within the DOT descriptions of the identified jobs, and the record evidence calling into question her ability to meet, at least, the GED level 1 mathematical requirements.

To the extent that the VE's testimony conflicted with the GED requirements contained within the DOT descriptions of the identified jobs, the Second Circuit has held that an ALJ is required to "inquire into all those areas where the expert's testimony

---

[5] Although not raised by plaintiff in her brief, the court seriously questions whether substantial evidence supports the plaintiff's ability to meet any of the minimum, level 1 GED requirements of the jobs on which the ALJ's step-five finding relied, not just limited to the category of mathematical development.

seems to conflict with the [DOT]." *Gibbons v. Comm'r of Soc. Sec.*, No. 22-2730, 2023 WL 3830774, at *2 (2d Cir. June 6, 2023) (quoting *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 92 (2d Cir. 2019) (internal quotation marks and alterations omitted)). "That is, an ALJ has an 'independent, affirmative obligation . . . to undertake a meaningful investigatory effort to uncover apparent conflicts, beyond merely asking the vocational expert if there is one.' " *Id.* (quoting *Lockwood,* 914 F.3d at 94 (internal quotation marks and alterations omitted)).  Here, the ALJ failed to acknowledge any of the aforementioned conflicts or deficiencies in his written decision; thus, no attempt was made to resolve them.  Instead, the ALJ stated, in boilerplate fashion and without further explanation, that he "has determined that the [VE]'s testimony is consistent with the information contained in the Dictionary of Occupational Titles."  (T. 31).  For all the reasons stated above, this court cannot agree.  The ALJ clearly failed to meet its affirmative obligation to probe into the apparent conflict between the GED levels required in the DOT and the vocational expert's testimony.  *See Gibbons*, 2023 WL 3830774 at *3 (ALJ failed to meet affirmative obligation to obtain a reasonable explanation for conflict between the VE's testimony as to jobs available to the claimant, and the GED level required in the DOT as related to those jobs).

In her brief, plaintiff cites to a recent Southern District case as support for her argument that remand is warranted.  *See Garcia v. Kijakazi,* No. 21-CV-1895, 2022 WL 3442314, at *1 (S.D.N.Y. Aug. 11, 2022), *report and recommendation adopted,* 2022 WL 3903182 (S.D.N.Y. Aug. 30, 2022).  In *Garcia,* the ALJ submitted a hypothetical to the VE which did not address, among other things, the claimant's evidenced inability

to perform basic math. *Id.* at *14-15.  The jobs ultimately identified by the VE required a GED level 1 in mathematical development, and the ALJ relied on these occupations at step five in concluding that plaintiff was not disabled.  (*Id.*).  However, as the court described:

> Nothing in the record indicates Garcia can perform those basic math skills. To the contrary, there is ample evidence that Garcia does not have the math skills required for Level 1 math. Dr. Villani reported that Garcia could "count to 10, could do two out of three simple calculations," but she had "difficulties with serials of 7 and 3." The record does not reveal what those "simple calculations" were and which one she could not do. Dr. Villani reported that Garcia would need assistance to manage funds and that she "needs help with money." Similarly, Dr. Tedoff stated that it "might be useful to have someone help manage her benefit payments" because "of her math skills being weak."  More generally, the record is unequivocal that Garcia has a cognitive function below even the 1st percentile.

*Id.* at *15 (internal citations omitted).  Thus, the court concluded that there was insufficient evidence to support the ALJ's finding that Garcia could perform the occupations identified by the VE, and the ALJ's error in this regard warranted remand. *Id.* at *16.

The parallels between *Garcia* and the instant matter are significant.  As in *Garcia,* the medical and other evidence in this case strongly suggests that plaintiff does not have the basic math skills required at GED Level 1 in mathematical development. In both cases, the ALJ failed to formulate a sufficiently detailed RFC finding in the face of considerable evidence suggesting plaintiff's deficiencies in math skills, thus leaving

doubt whether the claimant could meet the GED requirements of the jobs on which his step-five finding relied.

The Commissioner does not directly address the *Garcia* case in his brief, much less attempt to distinguish the deficiencies therein from the case at bar. Instead, the Commissioner points to consultative examiner Dr. Noia's statement - that the results of his examination "do not appear to be consistent with any psychiatric or substance abuse problems that would significantly interfere with the claimant's ability to function on a daily basis" - as contradictory to plaintiff's arguments and as constituting substantial evidence supporting the RFC evaluation. (Def.'s Br. at 5-6). The Commissioner also points to the ALJ's rejection of the moderate mental limitations opined by state agency medical consultant Dr. Bruni, and avers that even if the ALJ had adopted such limitations, they would not be preclusive of plaintiff's ability to perform unskilled work. (*Id.* at 6-7).

The Commissioner's argument misses the mark. In formulating the RFC finding, the ALJ failed to identify or discuss the record evidence suggesting that plaintiff lacked even the most basic math skills. Given plaintiff's lack of formal education and relevant work history, a question existed as to whether she had the RFC to perform the base mathematical requirements of unskilled work. The ALJ's deficient RFC analysis bled into the step five analysis, which was premised on said RFC and the VE's testimony. It is, furthermore, unclear to what extent the VE's testimony supported the ALJ's step-five finding at all, considering the VE's apparent representation that plaintiff could not meet the requirements of GED level 1 mathematical development.

Accordingly, remand for further administrative proceedings is warranted so that the ALJ can perform a more detailed analysis of plaintiff's abilities and determine if she can meet the minimum required GED levels to perform unskilled work. Although the court leaves to the ALJ's discretion whether to obtain additional evidence to determine the extent of plaintiff's intellectual limitations, the ALJ should ensure that his or her RFC analysis contemplates plaintiff's capacity to meet the minimum GED level of each development category. Likewise, the ALJ should present the VE with a hypothetical question reflecting an RFC that is supported by substantial evidence in the record. Finally, to the extent applicable the ALJ must ensure to explain in his or her written decision any inconsistencies between the VE's testimony and the Dictionary of Occupational Titles.

## VII.  **REMAINING ARGUMENTS**

As set forth above, plaintiff has identified additional arguments why she contends the ALJ's decision was not supported by substantial evidence. However, because the court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the court declines to reach these issues.[6] *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395,

---

[6] Although the court declines to reach the merits of whether the ALJ erred by failing to consider if plaintiff's intellectual disability and cervical radiculopathy were medically determinable impairments at step two, on remand the ALJ should ensure to supportably identify plaintiff's severe and nonsevere medically determinable impairments, as defined in the regulations. The Commissioner's argument, that any error by the ALJ in failing to assess plaintiff's medically determinable impairments was harmless, is belied by the well settled caselaw in this Circuit. *See Penny Lou S. v. Comm'r of Soc. Sec.*, No. 2:18-CV-213, 2019 WL 5078603, at *8 (D. Vt. Oct. 10, 2019) ("[T]he step-two harmless error doctrine is inapplicable to a determination that an impairment is not medically determinable."). "Th[e] distinction [between an ALJ's determination

at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13-CV-06844, 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *report recommendation adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 9) be **GRANTED**; and it is further

**ORDERED**, that defendant's motion for judgment on the pleadings (Dkt. No. 11) be **DENIED**; and it is further

**ORDERED**, that the decision of the Commissioner be **REVERSED**, and this action be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum-Decision and Order.

Dated:  February 5, 2024

Mitchell J. Katz
U.S. Magistrate Judge

---

that an impairment is not severe and his determination that an impairment is not medically determinable] is significant because an ALJ may credit a claimant's statements about her symptoms and functional limitations only if the impairment to which they relate is medically determinable." *Cooper v. Comm'r of Soc. Sec.*, No. 17-CV-1058, 2019 WL 1109573, at *5 (W.D.N.Y. Mar. 11, 2019) (where the ALJ's finding that plaintiff's condition was not a medically determinable impairment was not supported by substantial evidence, harmless error analysis did not apply and remand was warranted); *see also Jessica S. v. Comm'r of Soc. Sec.*, No. 6:22-CV-1250 (ATB), 2023 WL 5350988, at *6 (N.D.N.Y. Aug. 21, 2023) (listing cases).